IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ROOSEVELT HUNTER and ALEMDA ROBINSON, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) ) | CASE NO.: 19-180-JB-C |
| D & D TRANSPORT, INC., DAN LOCKWOOD HERRINGTON, *et al*, | ) ) ) ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

The Motion to Remand filed by Plaintiffs (Doc. 3) has been referred for a report and recommendation, under 28 U.S.C. § 636(b)(1)(B)(3) and General Local Rule 72(a)(2)(S). Diversity jurisdiction has been invoked in this Court under 28 U.S.C. § 1332. After consideration of the record, briefs of counsel and oral arguments with exhibits presented on May 2, 2019, it is recommended that Plaintiffs' Motion be **granted** and that this action be remanded to the Mobile County Circuit Court for all further proceedings.

I.  **Background**.

This case arises out of a motor vehicle collision in which Defendant Herrington was allegedly driving a semi-truck (commonly known as an 18-wheeler) who ran a red light colliding with the vehicle driven by Plaintiff, Roosevelt Hunter and occupied by his passenger, Almeda Robinson. Roosevelt Hunter required and underwent lumbar surgery stemming from this collision.

1

Plaintiffs filed this action in the Circuit Court of Mobile County, Alabama on December 5, 2018 and discovery was propounded by Plaintiffs along with the Complaint as authorized under the Alabama Rules of Civil Procedure.

Defendants, D & D Transport, Inc., and Dan Lockwood Herrington were served with the Complaint, along with Plaintiff's First Set of Interrogatories and Production of Documents, on December 14, 2018. The thirty-day period for removal after service on both Defendants expired on January 13, 2019 without the action being removed from state court.

Pursuant to Defendant's request, on March 4, 2019, Plaintiffs sent a supported demand package that contained settlement letters, along with attachments of medical records and bills,[1] with the exception of one bill from AL Anesthesiology, LLC, for $1,695.75. (Docs. 6-1 & 6-2) However, the vendor and the amount of said bill were clearly stated in the settlement demand letter. (Doc. 6-1 at 1).

The settlement package was sent in two parts, via email, on March 4, 2019, at 3:49 p.m., and 3:54 p.m. and by mail, on March 6, 2019. On March 4, 2019, at 4:30 p.m., Defense counsel confirmed, via email, that she was in receipt of the settlement letters and attachments.[2] Defense counsel also noted in her email that she was expecting to receive, by mail, a CD with the attachments to "make sure we

---

[1] Plaintiff listed eleven specific attachments: settlement letters demanding $400,000 (Hunter) and $75,000 (Robinson); accident report; executed causation letter; Mobile Infirmary records; Springhill Records; Franklin Medical records and bill; Alabama Orthopaedic records and bill; additional records and bill from Franklin Medical; additional records and bill from Alabama Orthopaedic; Cardiology Associates bill; and photographs.

[2] Plaintiff's oral argument Exhibit A at 3 (page numbers in upper right corner of document), attached to this Report and Recommendation.

2

have everything." (Exhibit A at 3). That CD arrived in the mail on March 6, 2019. (Defendant's Oral Argument Exhibit A at 1).[3] The actual exhibits received by Defendant after March 4, 2019, other than the anesthesiology bill that was supplied on March 11, 2019, could not be ascertained from the record. Although Defendant was clearly in receipt of a portion of the information packages on March 4, 2019 (Doc. 5 at 7), counsel was unable to identify the specific additional information that was not received until March 6, 2019.

Defendants removed this action on April 5, 2019, more than thirty days after March 4, 2019 but exactly thirty days after March 6, 2019.

**II.    Discussion.**

The Court's jurisdiction in this matter is premised on diversity of the parties and an amount in controversy exceeding $75,000. 28 U.S.C. §§ 1332, 1441, and 1446. (Doc. 1). Diversity of the parties is not challenged by the Plaintiffs. Additionally, there is no dispute that the totality of the information produced by the Plaintiffs no later than March 6, 2019 would establish a jurisdictional amount in excess of $75,000. The issue in this motion is whether Plaintiffs' production of information on March 4, 2019 was sufficient to trigger the running of the thirty-day period for removal.

28 U.S.C. §1446(b) sets forth the preconditions for removal in two types of cases: (1) cases removable on the basis of an initial pleading; and (2) cases that later become removable on the basis of "a copy of an amended pleading, motion, order or

---

[3] Defendant's oral argument exhibit is also attached to this Report and Recommendation.

3

other paper." This case is of the second variety, often referred to as a second paragraph removal. Under that provision, 28 U.S.C. § 1446(b)(3), a notice of removal is timely if filed within 30 days of receiving a "copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."

In removing cases of this type, the defendant bears the burden of proving by a preponderance of the evidence that the amount in controversy more likely than not exceeds the jurisdictional requirement. *Ford v. Jolly Shipping, Inc.*, 2017 LEXIS 153187, *4-5 (S.D. Ala. Sept. 19, 2017). Thus, in order to remove this case, Defendants needed such sufficient evidence beyond the generally listed damages in Plaintiffs' initial pleading in order to meet their burden of proof to successfully remove and establish the existence of federal jurisdiction. Critically important to this motion is a determination of when the information necessary for the Defendants to ascertain the value of Plaintiffs' claims was received. In other words, did they have sufficient information on March 4, 2019 or not until March 6, 2019?

Defendants admit to receiving Plaintiffs' settlement demand letters "with a portion of supporting documents on March 4, 2019 via email correspondence." (Doc. 1 at 2, ¶ 4). These demand letters specified settlement amounts totaling $475,000 and included an itemization of past medical expenses for each defendant: $34,337.66 for Hunter and $3,313.00 for Robinson. They also contained specific information about injuries sustained, treatment required and gave the names of the caregivers and the dates when medical care was sought. The attachments to these

4

letters were specifically identified in the email correspondence by eleven categories of information, including an accident report, a causation letter, photographs and medical records with corresponding bills. As stated previously, the entirety of this information, without dispute constitutes notice that the case was removable. That is why the Court requested an assessment from the parties as to the information that was sent and received on March 4, 2019 in order to determine if that subset of information would in fact provide Defendants with the information needed to remove the case or was it necessary to await the information contained on the CD that was delivered on March 6, 2019.

Plaintiffs responded to the Court's inquiry by stating that the information was sent and acknowledged as received on March 4, 2019. Defendants admit receiving a portion of the information on March 4, 2019 but waited to receive the totality of the information on March 6, 2019 to start the thirty-day clock. See Doc. 5 at 5 ("The information in the enclosures constituted sufficient 'other paper' containing new, different, and additional information that was not already plain to see from the Complaint itself."). Defendants did not and could not, however, identify those documents received only on March 6, 2019 or the specific documents received on March 4, 2019 by email.

"Offers of settlement or demand letters are relevant and may be considered in evaluating the § 1332 amount in controversy for removal purposes, however, their utility varies widely depending on the circumstances." *Montgomery v. Food Giant Supermarkets, Inc.*, 2014 WL 5307890, at *2 (S.D. Ala. Oct. 16, 2014). This Court distinguishes between demand letters that contain puffery and demand letters that have specific information supporting a reasonable assessment of value when

determining if a demand letter can be used to determine the amount in controversy. *Sims v. Valluzzo*, 2016 WL 3211430, at *3 (S.D. Ala. June 9, 2016). In *Sims*, the court aggregated several factors in a demand letter and found that the demand letter alone proved the amount in controversy exceeded $75,00.00. The *Sims* demand letter specified $19,353.22 in medical expenses and $9,156.00 in lost wages, sought compensatory damages for pain and suffering, mentioned the plaintiff's continued health problems caused by the defendant, and was sent 20 months after the incident. *Id.*

The demand letters in this case are similar to the one in *Sims*, in that they specified $34,337.64, for Plaintiff, Roosevelt Hunter, and $3,313.00 for Plaintiff, Almeda Robinson, in past medical expenses, sought damages for pain and suffering, specified invasive surgical procedures that Hunter underwent, noted that a plaintiff required ongoing rehabilitative therapy, and these letters were sent 11 months after the incident. Therefore, these demand letters were not "bare bones" or mere puffery and tilt closer to the "specific information" end of the continuum of scenarios hypothesized in *Jackson v. Select Portfolio Servicing, Inc.*, 651 F. Supp. 2d 1279, 1281 (S.D. Ala. 2009) ("Settlement offers commonly reflect puffing and posturing, and such a settlement offer is entitled to little weight in measuring the preponderance of the evidence. On the other hand, settlement offers that provide specific information ... to support the plaintiff's claim for damages suggest the plaintiff is offering a reasonable assessment of the value of his claim and are entitled to more weight.") (internal quotation marks and citations omitted).

Defendants had the settlement letters and some unknown quantity of the attachments supporting the statements made in those letters on March 4, 2019. This information with sufficient, in the undersigned's opinion, for Defendants to

ascertain on that date that the amount in controversy was more than $75,000.00. (Docs. 6-1 & 6-2). Defendants have not shown that the additional information received on March 6, 2019, which the undersigned believes to be photographs that may have been too large for email, was critical to their decision to remove.

### III. Conclusion.

There is no question that the information provided by Plaintiffs in their settlement packages was sufficient for the Defendants to ascertain the potential value of the claims presented by the Plaintiffs. The disagreement is over when the Defendants had access to an amount of that information that would have informed them that removal was an option. Based on the information presented, it is decided, that Defendants had access to that information on March 4, 2019, which means that the removal on April 5, 2019 was a couple of days late. Accordingly, failing to file within the 30 days renders the removal defective justifying remand.

### **NOTICE OF RIGHT TO FILE OBJECTIONS**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); S.D. Ala. GenLR 72(c)(1) & (2). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for

objecting and the consequences on appeal for failing to object.  In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

DONE this 24th day of May 2019.

s/WILLIAM E. CASSADY  
UNITED STATES MAGISTRATE JUDGE